OPINION OF THE COURT
Ira Gammerman, J.
Defendant Marine Midland Bank, N. A. (Marine) moves pursuant to CPLR 3212 for summary judgment dismissing the complaint.
In this action to recover compensatory and punitive damages, plaintiff Dynamics Corporation of America (DCA) seeks to hold Marine accountable for alleged acts of misconduct which purportedly compelled DCA to institute proceedings for an arrangement under former Bankruptcy Act ch 11 (11 USC § 701 et seq.).
The second amended complaint recounts a long-standing banking relationship between the parties. Marine was the administrator of DCA’s pension funds and stock transfer operations and was one of several institutional lenders providing millions of dollars for DCA’s program of corporate acquisition. In addition, DCA maintained a checking account with Marine and, pursuant to a written agreement dated June 18, 1969, *740 Marine was authorized to collect checks that were delivered to a post-office lock box and to indorse and deposit those checks in DCA’s account.
The gravamen of the complaint is that, beginning in 1970, Marine instigated a conspiracy to destroy DCA’s business. It is alleged that Marine, in concert with DCA’s other lenders forced a restructuring of DCA’s short-term debt whereby the notes evidencing all of DCA’s bank borrowings became due on a common maturity date every 30 days. The last note issued by DCA to Marine, in the amount of $4,420,000, was dated June 28, 1972 and came due on July 28,1972. DCA alleges that, prior to the July 28 maturity date, Marine made repeated representations that the loan would be renewed; that the representations were relied upon and no efforts were made to secure financing from other sources; but that, unknown to DCA, its loan had been transferred to Marine’s classified loan section with instructions that the loan be called in when the note matured. The complaint alleges, further, that although the loan was not in default until the close of business on July 28, Marine appropriated the balance of DCA’s checking account and the uncollected checks from DCA’s lock box at 10:30 a.m. on that day and then notified DCA’s other lenders who immediately seized the accounts and assets of DCA in their possession. DCA maintains that it was precipitated into bankruptcy by these activities of Marine.
The eight causes of action asserted in the second amended complaint are characterized by DCA as falling into three basic categories: (1) claims predicated on Marine’s breach of the agency and contractual duties it owed DCA with respect to the lock box; (2) claims predicated on Marine’s fraudulent or negligent misrepresentations regarding the renewal of DCA’s loan; and (3) claims predicated on Marine’s wrongful seizure of checks drawn to the order of DCA and DCA’s funds on deposit and the offset of DCA’s funds against its loan prior to maturity.
It is Marine’s position that the complaint must be dismissed because DCA neither listed its claims against the bank in the schedules filed in the chapter 11 proceeding nor obtained an order from the Bankruptcy Court authorizing the abandonment of those claims. Marine argues, further, that DCA is precluded from going forward because it did not incur any damages as a result of the alleged misconduct and because it is judicially and equitably estopped from asserting claims which are inconsistent with the position it took before the Bankruptcy Court concerning Marine’s conduct and the basis for the chapter 11 petition.
There is no dispute concerning DCA’s failure to schedule the claims asserted here in the chapter 11 proceedings. DCA main *741 tains, however, that it never lost title to its claims against Marine because it was a debtor in possession and because the claims were not intentionally concealed. It is alleged, further, that the lock box causes of action were dealt with during the bankruptcy proceedings because DCA sought and obtained the Bankruptcy Court’s authorization to assert these claims in a lawsuit between Marine and Graybar Electric Co., the maker of a check payable to DCA for which payment was stopped after Marine notified DCA of its setoff. Finally, DCA alleges that it failed to disclose its other claims because it was unaware of them during the arrangement proceedings.
In an apparent case of first impression, Stein v United Artists Corp. (691 F2d 885 [9th Cir 1982]), the Ninth Circuit Court of Appeals addressed the question of how unlisted assets are to be pursued after the completion of chapter 11 arrangements. As here, the former Bankruptcy Act applied and the appellant, an assignee of a bankrupt in a chapter 11 proceeding, argued that, because the debtor remains in possession and because no trustee is appointed to distribute the bankruptcy estate, all property of the debtor, whether administered or unlisted, should revest upon confirmation of the plan of arrangement.
Finding no legal precedent, the court analyzed chapter 10 bankruptcy cases, in which a trustee is appointed, in light of the policies and procedures of chapter 11. It observed that in chapter 10 bankruptcies the trustee is vested with title to the bankrupt’s property by operation of law (citing former 11 USC § 110 [a]; Dallas Cabana v Hyatt Corp., 441 F2d 865, 867 [5th Cir 1971]). In such cases, title to unlisted assets is controlled by the doctrine of abandonment and title revests in the bankrupt only with respect to those assets which have been administered or affirmatively abandoned by the trustee. Citing the Supreme Court’s seminal decision in First Natl. Bank v Lasater (196 US 115 [1905]), the Circuit Court noted that abandonment can result only when the trustee knows of the existence of the asset and, therefore, unscheduled claims do not revest in the bankrupt. Rather, they remain dormant in the bankruptcy estate (citing United States v Ivers, 512 F2d 121,124 [8th Cir 1975]; Stanolind 011 & Gas Co. v Logan, 92 F2d 28, 31 [5th Cir 1937], cert denied 302 US 763 [1938]).
The court in Stein (supra, at p 892), determined that a debtor remaining in possession is a fiduciary owing the same duties as a trustee and concluded that “Chapter XI proceedings, in which the debtor remains in possession, present a stronger case for preventing bankrupts from asserting title to unlisted [claims] *742 than in Chapter X cases”. It reasoned that “The dangers resulting from the concealment of assets are greater when the debtor remains in possession than in cases in which a third party acts as trustee. An outside trustee is a separate mechanism for discovering unlisted claims or assets. If a debtor in possession were permitted to omit claims in bankruptcy and later assert title to them, there might be an inducement to do so, to the prejudice of creditors’ interests. Such a rule would undermine the fiduciary status of the debtor in possession.” (Stein v United Artists Corp., supra, at p 892.) The court ruled, further, that it was immaterial whether or not the failure to schedule the claim was intentional. This court is inclined to agree. Chapter 11 proceedings are administered for the benefit of creditors and, no matter how innocently the debtor may have acted, it would be inappropriate to allow it to assert an unscheduled claim on its own behalf.
The record in the case at bar reveals that under DCA’s plan of arrangement, confirmed by order of the Bankruptcy Court dated November 27, 1974, DCA distributed cash and stock worth a total of $15,309,000, made payments of priority claims totaling $525,000 and obtained a discharge from claims totaling $48,864,000. In addition, DCA was relieved of obligations to pay interest in excess of $5,000,000 that would otherwise have accrued. To now permit DCA to pursue claims in excess of $36,000,000, solely on its own behalf, would result in a grave injustice to its former creditors. Rather, as determined in Stein (supra), the proper procedure for enforcement of DCA’s alleged, newly discovered claims against Marine is a petition to reopen the bankruptcy proceedings under former Bankruptcy Rules, rule 515 (in 11 USC, Appendix). Under this procedure, the Bankruptcy Court may decide “whether reopening is desirable and, if so, whether the claim [should] be administered for the benefit of creditors or abandoned” (Stein v United Artists Corp., supra, at p 893).
DCA seeks to avoid the seemingly harsh impact of the Stein decision (supra) by asserting excusable ignorance of its cause of action for fraudulent concealment and improper offset. However, the conduct complained of in these causes clearly came to light on the day Marine called in DCA’s loan and it therefore possessed all the information necessary to list its unliquidated claims against Marine in the schedules subsequently filed in the arrangement proceedings.
Equally without merit is DCA’s contention that its lock box causes of action were dealt with during the bankruptcy proceed *743 ings within the meaning of former Bankruptcy Act § 110 (i) so as to permit title to these causes to revest in DCA. DCA maintains that the causes were dealt with by virtue of its authorization to assert cross claims as an impleaded defendant in the previously mentioned Graybar action.
That action concerned the ownership of checks payable to DCA on which payment was stopped following Marine’s setoff of DCA’s loan. It was ultimately conceded that Graybar had given DCA a replacement check in substitution for the check that was the original subject of the action and DCA’s claim against Graybar was dismissed. To the extent that DCA asserted claims against Marine for all other checks as to which payment had been stopped, the matter was resolved by stipulation withdrawing the claims without prejudice to DCA’s right, if any, to commence a separate action for such claims. Nowhere does it appear, however, that these claims were asserted for the benefit of DCA’s creditors or that they were administered in the bankruptcy proceedings. Rather, DCA did no more than obtain the Bankruptcy Court’s statutorily mandated authorization to appear and assert claims in the action and then advise the court and official creditors’ committee of the status of the action. As previously noted, if DCA is to pursue the lock box causes at this time, the rights of its creditors, other than Marine, should be taken into account.
Accordingly, the motion to dismiss the complaint is granted.